**STATE of North Dakota,
Plaintiff/Appellant,**

v.

**Lynn HARRIS, Defendant/Appellee.**

Cr. No. 688.

Supreme Court of North Dakota.

Dec. 12, 1979.

Michael S. McIntee, State's Atty., Towner, for plaintiff and appellant.

Ella Van Berkom, Minot, for defendant and appellee.

PAULSON, Justice.

The State of North Dakota ["State"] brought this appeal from an order of the McHenry County District Court suppressing evidence which was seized from defendant, Lynn Harris ["Harris"]. The issue on appeal, narrowly defined, is whether or not the trial court erred in finding that the failure of the arresting officer to book or charge Harris for the offense of disorderly conduct, which charge the arresting officer stated as the ground for the initial custodial arrest, vitiates the search of his person incident to that arrest and bars prosecution on the fruits of that search. We hold that the district court erred in suppressing the evidence under the facts of this case and reverse and remand.

On the morning of October 1, 1978, at about four o'clock, City of Velva Chief of Police Roland K. Kersten and an Officer Christianson were awakened by the sound of a car, with a very loud muffler, being driven with its tires squealing through the City of Velva. The officers got up and put on their uniforms and went outside to investigate. They saw a 1961 Chevrolet two-door hardtop being driven in an erratic manner. They suspected that the driver of the car was intoxicated and ordered the driver to pull the car over to the curb. Neal Knutson, the driver of the car, was arrested on the charge of driving while intoxicated.

Lynn Harris was a passenger in Neal Knutson's car. When the police officers stopped the Knutson car, Harris became "lippy", using loud and abusive language, according to Police Chief Kersten. Harris was told that he was under arrest for disorderly conduct, and he was handcuffed and told to stand in front of the car. There were beer cans scattered all over the interior of the car. The officers were both acquainted with Knutson and Harris and, knowing they were under twenty-one years of age, they began to search the car for more cans of beer. In the process of doing so, Chief of Police Kersten lifted up a sweatshirt from the front seat of the car to look underneath it and a bag of marijuana fell out of the sweatshirt and onto the street. Both Harris and Knutson denied ownership of the marijuana.

Police Chief Kersten walked over to where Harris was standing and said to him: "Lynn, I am going to check your pockets to see if you are clean, as far as I am concerned I don't want to bust you on this, we really don't have anything other than disorderly conduct to hold you on." Kersten proceeded to do a pat search of Harris and felt a bulge in Harris's right front pocket. He reached into Harris's pocket and pulled out a plastic bag containing a quantity of white pills, which laboratory tests later proved to be amphetamines of a variety commonly known as "speed" or "white cross".

The district court initially denied the suppression motion, but later reversed itself in an amended decision and suppressed the evidence. In the Amended Memorandum of Decision on Motion to Suppress, the district court reasoned that because Harris was never booked or charged with disorderly conduct, the disorderly conduct arrest was a mere pretext upon which the search could be based. The district court decided that because the police failed to formally charge Harris with disorderly conduct, Harris was not under arrest at the time of the search and that the search was illegal because it was based on an unlawful arrest. We disagree.

■ The appeal from this decision to suppress was taken pursuant to § 29–28–07(5) of the North Dakota Century Code, which provides:

"*29–28–07. From what the state may appeal.*

An appeal may be taken by the state from:

.        .        .        .        .

5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

Prior to the 1977 amendment to § 29–28–07 [S.L.1977, ch. 294 § 1], which created and enacted subsection 5 thereto, this court had held, in *State v. Iverson*, 219 N.W.2d 191 (N.D.1974), that the prosecutor has no right to appeal from an order suppressing evidence. In *Iverson, supra,* 219 N.W.2d at 192, this court decided to rule on the merits because both sides requested it, even though that case could have been decided on the issue of appealability alone. In the instant case no copy of the prosecutor's statement which should have accompanied the notice of appeal was filed with the clerk of the district court. Because the pertinent portion of § 29–28–07(5), N.D.C.C., is new and counsel for Harris never objected to the prosecutor's overlooking the procedural requirements of § 29–28–07(5), N.D.C.C., we will deem the right to make such an objection to have been waived and will proceed to a discussion of the merits. We note that §§ 632.11 and 632.12, Minn.Stat.Ann., are

similar and that the Minnesota Supreme Court allowed a similar prosecutorial mistake in *State v. Kinn*, 288 Minn. 31, 178 N.W.2d 888 (1970).

■ We now proceed to consideration of whether or not the search of Harris's person was valid. The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Since the United States Supreme Court decided *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), all evidence obtained by searches and seizures in violation of the Fourth Amendment is inadmissible in State court as well as Federal court by virtue of the Due Process Clause of the Fourteenth Amendment. *See State v. Manning*, 134 N.W.2d 91, 98 (N.D.1965). The purpose for the exclusionary rule is to deter unlawful police action. *Michigan v. DeFillippo*, —— U.S. ——, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

As we said in *State v. Meadows*, 260 N.W.2d 328, 331–332 (N.D.1977):

"All searches made without a valid search warrant are unreasonable unless, in addition to probable cause, they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant."

One of the recognized exceptions to the warrant requirement is a search made incident to a lawful arrest. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In the instant case, we discuss only the issue of the validity of the search of Harris's person incident to his arrest, and not the validity of the search of the automobile.

■ At the time of Harris's arrest, the officers had probable cause to believe that Harris had committed the three following offenses: (1) possession of a controlled substance; (2) minor in possession of alcohol; and (3) disorderly conduct. For some reason the police chose to place Harris under arrest for disorderly conduct. If the arrest was valid when made, the search incident thereto was also valid. *Michigan v. DeFillippo, supra*, 99 S.Ct. at 2631. Whether the arrest was valid depends on State law. *Ker v. California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963).

■ The minimum constitutional requirement for a valid arrest is probable cause. As the United States Supreme Court said in *DeFillippo, supra* 99 S.Ct. at 2632:

" . . . 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."

The *DeFillippo* Court, citing *Gerstein v. Pugh*, 420 U.S. 103, 119–123, 95 S.Ct. 854, 865–867, 43 L.Ed.2d 54 (1975), stated, 99 S.Ct. at 2632:

" . . . the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest."

■ In North Dakota, for a warrantless arrest to be valid, it must be based upon probable cause and fit the requirements of § 29–06–17, N.D.C.C., which provides:

"*29–06–17. Officer must state authority when arresting without warrant.* —When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest, unless:

1. The person to be arrested then is engaged in the commission of an offense; or

2. Such person is pursued immediately after the commission of an offense or after an escape; or

3. Such person flees or forcibly resists before the officer has opportunity so to inform him; or

4. The giving of such information will imperil the arrest."

In *State v. Gagnon*, 207 N.W.2d 260, 264 (N.D.1973), we held that an arrest and search incident thereto were unlawful where the officers did not inform the defendant of the cause of his arrest but told him only that they were investigating his activities. In the instant case, the officers apparently believed that the crime of disorderly conduct was committed in the officers' presence and Police Chief Kersten in fact told Harris that he was under arrest. Under the circumstances the cause of the arrest was obvious. Accordingly, we hold that the arrest was valid.

We now turn to the question of the permissible scope of the search incident thereto. The search performed by Chief of Police Kersten was akin to a pat search. It was not of an intrusive nature or shocking to the conscience. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), the United States Supreme Court held:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that Amendment."

*Robinson, supra*, allows a search to be more extensive than a limited search for weapons or probable fruits of the offense for which the defendant is charged.

■ The district court concluded that the disorderly conduct arrest was a mere "pretext" upon which the search was based because the officers never proceeded to book or charge Harris with disorderly conduct, but, instead, charged Harris with possession of a controlled substance.[1] We hold that where the police have probable cause to make an arrest for one reason, and in fact do make an arrest, they may thereafter prosecute for another offense and choose not to prosecute on the charge on which the arrest was initially made if in the search incident to the arrest they learn of other bases for prosecution. The question of police motivation for a search is a difficult one. *See* discussion at 2 LaFave, Search and Seizure § 5.2. (1978). Because we hold that Harris was lawfully arrested for disorderly conduct, the search incident thereto was lawful and the subsequent failure to book Harris on the disorderly conduct charge does not vitiate the arrest or the search.

Order suppressing evidence reversed and case remanded for trial.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

1. It is important to mention that if we were to affirm the district court's decision, we would in effect be eliminating the practice of plea bargaining in North Dakota.