STATE of North Dakota, Plaintiff
and Appellee,

v.

Jeffrey BOHL, Defendant and Appellant.

Cr. No. 795.

Supreme Court of North Dakota.

March 25, 1982.

John E. Greenwood, Asst. State's Atty., Jamestown, for plaintiff and appellee.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant; argued by William A. Mackenzie, Jamestown.

ERICKSTAD, Chief Justice.

Jeffrey Bohl appeals from a judgment of conviction of the crime of delivery of an alcoholic beverage to a person under the age of 21 years. The judgment was entered August 21, 1981, by the County Court with Increased Jurisdiction of Stutsman County. Bohl was sentenced to a jail term of six months with three and one-half months suspended on condition that he pay a fine of $250 and comply with additional provisions during the one-year probationary period. We affirm that conviction.

Bohl raises the following three issues on appeal:

1. Did the State of North Dakota fail to prove each and every material allegation set forth in the criminal complaint?

2. Did the State fail to prove that the beverage allegedly delivered contained more than one-half of one percent of alcohol by volume?

3. Was the provision of the sentence directing Bohl to refrain from the use of alcohol for the probationary period arbitrary, contrary to state statute and an abuse of judicial discretion?

The charges against Bohl stem from a keg party held at the Jamestown Reservoir on June 7, 1981. The party was broken up by Joyce Burkett, Stutsman County Deputy Sheriff, and Brent Burkett, her husband and a special deputy for the county, who were sent to the scene because of a complaint filed with the sheriff's department. After receiving the complaint, the Burketts called for help because it was department policy to have more than one patrol vehicle on the scene when breaking up keg parties. During the 20-minute period in which they waited for help, they observed the party through their binoculars. When help arrived, the three deputy sheriffs moved in and broke up the party. They confiscated a keg and later traced it through the county's keg registration program to Jeffrey Bohl. The keg had been purchased by Bohl the day before from "Bottles & Jugs" of Jamestown. The keg registration card signed by Bohl indicated that the keg purchased by him contained "Pabst".

The testimony indicates that Kelly Harris, 18 years old at the time of the trial, drove in her parent's car from Jamestown to Bohl's home in Cleveland on June 6, 1981. She and Bohl, for an unexplained reason, then drove the 20 miles back into Jamestown, stopped at Bottles & Jugs where Bohl bought, according to the registration card, two kegs of "Pabst" beer. After Bohl apparently placed the kegs in the car, they then made the 20-mile return trip to Cleveland. There, with one 16-gallon keg in the trunk of Harris' mother's car and the other 16-gallon keg in the back seat, Harris dropped Bohl off at his home and, according to Harris and Bohl, "forgot" to take Bohl's kegs out of the car. Harris then drove back to Jamestown again. She left the two kegs at the garage of a friend and then returned to her home in Jamestown.

Bohl testified that Harris called him the next day, June 7, 1981, and asked him if she could use one of the kegs. He testified that his answer was an unequivocal "no". The keg mysteriously showed up at the cove of the Jamestown Reservoir anyway. That evening when the party was broken up by the sheriff's department, the keg was confiscated and ultimately traced to Bohl. Bohl did not explain during the trial what he intended to do with the two 16-gallon kegs.

The criminal complaint sworn against Bohl reads in relevant part:

"that the defendant did on the 6th day of June, 1981, in the City of Jamestown in said County and State, Commit the crime of delivery of an alcoholic beverage to a person under the age of twenty-one years, § 5–01–09, NDCC a Class A Misdemeanor, which said crime was committed as follows, to-wit: That at the said time and place the said defendant did deliver alcoholic beverages to a person under the age of twenty-one years at the Jamestown Reservoir, Jamestown, North Dakota, . . . ."

Bohl's first argument on appeal is that the State did not prove each and every element of that complaint. It appears that there are two parts to that argument. First, he seems to be arguing that the State failed to prove that the delivery took place on June 6, 1981. Second, it appears that he is arguing that if there was a delivery it did not take place at the Jamestown Reservoir, as alleged in the complaint.

We have concluded that it was unnecessary for the State to prove each and every allegation set forth in the criminal complaint. The State is only required to prove the *elements of the offense charged.* § 12.1–01–03, N.D.C.C. A criminal complaint serves two purposes: (1) to enable the magistrate to determine whether or not probable cause exists to support a warrant, *State v. Hager*, 271 N.W.2d 476, 478 (N.D. 1978), and (2) to fairly inform the defendant of the charge in order that he may prepare his defense, *State v. Jelliff*, 251 N.W.2d 1, 5 (N.D.1977). In this case, Bohl is not arguing that the complaint should have been dismissed because it was insufficient to charge an offense. Instead, he is arguing that the State did not prove the elements alleged in the complaint.

A person may not be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The term "element of an offense", is defined by Section 12.1–01–03(1), N.D.C.C., as follows:

"1. . . . a. the forbidden conduct; b. the attendant circumstances specified in the definition and grading of the offense; c. the required culpability;

d. any required result; and e. the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue."

In reviewing the facts of this case to determine whether or not the elements of the crime were proved by the State, we apply the standard of review as stated in *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976):

"In criminal cases we have repeatedly held that 'at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian*, 212 N.W.2d 843, 845 (N.D. 1973), and cases cited therein; *State v. Neset*, 216 N.W.2d 285, 287 (N.D.1974).

"However stated, these rules indicate a recognition that the truth can better be determined in the confrontation of the testimony of witnesses appearing in person than from transcript of the testimony of those witnesses." 246 N.W.2d at 890.

The first element to be proved by the State is "forbidden conduct". The forbidden conduct in this case is defined by Section 5–01–09, N.D.C.C., as follows:

"*5–01–09. Delivery to certain persons unlawful.*—Any person delivering alcoholic beverages to a person under twenty-one years of age, . . . is guilty of a class A misdemeanor, . . . ."

A review of the facts of this case supports the finding that there was (1) a delivery of alcoholic beverages, (2) to a person under 21 years of age. There is no doubt that Bohl purchased two kegs of "Pabst" from Bottles & Jugs. That purchase is proved by the registration card signed by Bohl and kept as a business record of Bottles & Jugs. Bohl, while not admitting that the kegs contained beer, did admit that the kegs were left in the possession of Kelly Harris who was 18 years old at the time of the trial. He, however, testified that when she asked him whether or not she could use the kegs, he told her that she could not.

The testimony of Brenda, a friend of Harris', supports a finding that Bohl delivered the kegs not only to Harris, but also through her to the other minors attending the Jamestown Reservoir party. The following testimony describes a telephone conversation between Brenda and Kelly Harris:

"Q Did you discuss the party at that time?

"A She just asked me what she should do with the keg.

"Q Did she tell you what she was going to do with the kegs?

"A No. All I knew is just go out to the cove, and I don't—that's all I know.

\* \* \* \* \* \*

"A Like she asked me what should she do with the keg and I said I don't know and she said meet me at the cove, you know, and I went to the cove and the keg had already been there, but she wasn't there. So someone else must have brought the keg there, but I don't know who brought the keg there."

This explains how the keg may have reached the cove. The court may have concluded this was its intended destination from the beginning of the purchase. Adults who purchase beer in kegs and place them with minors will have difficulty absolving themselves of all responsibility for the kegs. In this case the court apparently chose not to believe Bohl's testimony and this was its privilege.

Bohl's own testimony provides evidence that he did not purchase the kegs of beer for his own use. Only one keg of beer was confiscated when the deputy sheriffs broke up the party at the Jamestown Reservoir. The other keg, as Kelly Harris testified, had been left at the garage of a friend of Kelly Harris'. Although Bohl had paid for the beer and put a deposit down on each of the two kegs, his testimony shows a lack of concern for retrieving the second keg. There are no further attendant circumstances which need be discussed.

■ The next element which we will discuss is "culpability". Section 5–01–09, N.D.

C.C., does not specify any culpability requirement. The general rule of Section 12.1–02–02(2), N.D.C.C., provides that if a statute defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is that one commit the offense willfully. That culpability requirement, however, applies only to the offenses or crimes described in Title 12.1, N.D.C.C., and therefore does not apply to Section 5–01–09, N.D.C.C. *City of Dickinson v. Mueller*, 261 N.W.2d 787, 789 (N.D.1977). Section 5–01–09 contains no culpability requirement and thus the act is a strict liability offense, punishable without regard to intent, knowledge, willfullness or negligence. *State v. Carpenter*, 301 N.W.2d 106, 111 (N.D.1980); *State v. North Dakota Ed. Ass'n*, 262 N.W.2d 731, 734 (N.D.1978).

The fourth element which the State must prove is that a required result was achieved. In this case, the required result was that the beer be delivered to a person under 21 years of age. As previously discussed, that was proved by the State by showing that Kelly Harris was given control of the two kegs of beer when she left Bohl's home. Further, the State called witnesses who testified not only that they were minors and had consumed beer out of the keg registered to Bohl, but that they had witnessed other minors drinking the beer from that keg. The required result, that there be a delivery to minors, was therefore proved by the State.

Finally, the State must prove the nonexistence of any defense as to which there is evidence to raise a reasonable doubt. No such defenses were raised.

The second issue raised by Bohl is: Did the State fail to prove that the beverage allegedly delivered contained more than one-half of one percent of alcohol by volume?

■ Bohl was charged with delivering alcoholic beverages to a person under 21 years of age. The term "alcoholic beverages" is defined by Section 5–01–01, N.D.C.C.:

" 'Alcoholic beverages' shall mean any liquid suitable for drinking by human beings, which contains one-half of one percent or more of alcohol by volume." § 5–01–01(1), N.D.C.C.

Beer is defined as:

" 'Beer' shall mean any malt beverage containing more than one-half of one percent of alcohol by volume." § 5–01–01(2), N.D.C.C.

Bohl contends that because the State did not introduce any scientific evidence such as a chemical test by the State Toxicologist that the beverage in the confiscated keg contained more than one-half of one percent of alcohol by volume, that the State therefore failed to prove beyond a reasonable doubt a necessary element of the offense. We do not agree that the State is required to prove that the beverage contained *more* than one-half of one percent of alcohol by volume. The statute requires that the State prove only that the beverage was an alcoholic beverage, defined in essence as containing at *least* one-half of one percent of alcohol by volume. The State, in proving that the beverage was beer, met its burden.

The State's evidence concerning the beverage contained in the 16-gallon keg confiscated at the reservoir party consisted of: first, a showing that Bohl purchased two 16-gallon kegs of "Pabst" at the Bottles & Jugs in Jamestown, and secondly, opinion testimony by the sheriff and by minors attending the party. Either of those methods of proof would have been sufficient to prove that the beverage in the keg contained at least one-half of one percent of alcohol by volume.

The State introduced into evidence a registration card signed by Bohl indicating that he purchased two kegs of "Pabst" from Bottles & Jugs on June 6, 1981. That registration card was properly received by the court as a business record. There is, therefore, no question that Bohl purchased the keg that was confiscated. Further, there is no question that that keg contained "Pabst" beer. It is presumed that the Pabst Brewing Company of Milwaukee, Wisconsin,

obeyed the law when it sold two kegs of beer through its distributor to the Bottles & Jugs bottle shop, which kegs were subsequently sold to Jeffrey Bohl. § 31–11–03(32), N.D.C.C. In other words, it is presumed that Pabst Brewing Company did not mislabel its product when it called it beer. To do so would be in violation of the Food, Drug, and Cosmetic Act, as set forth in Chapter 19–02.1 of the North Dakota Century Code. Under the Act, pursuant to the regulations under the Federal Alcohol Administration Act, Title 27, Code of Federal Regulations, Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, Pabst Brewing Company would be doing an illegal act if it designated a liquid beer if it contained less than one-half of one percent alcohol by volume. Those regulations read as follows:

"*§ 7.24 Class and type.*

(d) No product containing less than one-half of one percent of alcohol by volume shall bear the class designations 'beer', 'lager beer', 'lager', 'ale', 'porter', or 'stout', or any other class or type designation commonly applied to malt beverages containing one-half of one percent or more of alcohol by volume." 27 C.F.R. § 7.24 (1981).

The North Dakota Century Code, Section 31–11–03(32), raises a disputable presumption that Pabst Brewing Company obeyed the law. Bohl offered no evidence to prove that the "beer" in the confiscated keg contained less than one-half of one percent alcohol by volume. The court, therefore, could reasonably have believed that the Pabst keg contained at least one-half of one percent of alcohol by volume.

Additionally, the State called several witnesses to testify that the beverage contained in the keg contained beer. Lay witnesses may give their opinion if those opinions or inferences are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Rule 701, N.D.R.Ev.

In this case, Officer Burkett testified that she observed people drinking beer from

cups. Richard Seekins and Wayne Deery both testified that they drank beer from the keg. Carl Fruetel testified that he saw people drinking beer. Their testimony was based on their senses of sight, smell, and taste. Their opinions were therefore rationally based on their perceptions and were helpful to an understanding of their testimony concerning a fact that was obviously in issue.

As beer is a rather common substance in today's society, this court is reluctant to accept Bohl's contention that the witnesses were not qualified to give an opinion as to whether or not the beverage contained in the confiscated keg was beer. Notwithstanding our reluctance, that is immaterial as it is for the trial court as trier of facts, not our court, to weigh the evidence and give it such credance as it deems appropriate. Substantial evidence supports the verdict of the trial court and, accordingly, we will not set aside a verdict based thereon. *State v. McMorrow*, 314 N.W.2d 287, 290–91 (N.D.1982); *State v. Neset*, 216 N.W.2d 285, 287 (N.D.1974).

We are not alone in permitting such opinion testimony. In *Atles v. United States*, 50 F.2d 808, 809 (3rd Cir. 1931), the Court said:

"[W]ith a proper showing of qualification to form a judgment, there is no reason why a witness, qualified by experience, should not give his opinion that the beverage sold and drunk was or was not beer containing an unlawful percentage of alcohol.

"With the evidence of their senses of sight, smell, and taste and their conclusions before the trial judge, we perceive no reason why the seizure was not lawful and why the beer seized, which undoubtedly contained a high percentage of alcohol, should not be admitted in evidence." 50 F.2d at 809.

In *Stoecko v. United States*, 1 F.2d 612, 613 (3rd Cir. 1924), the Court said:

"One who has drunk whisky, who is familiar with its taste and smell, may give opinion evidence as to whether the beverage sold and drunk was whisky. If it appears that the article is whisky, no further proof is necessary to conclude that it contains more than one-half of 1 per centum of alcohol, for it is a matter of common knowledge that whisky has a greater alcoholic content than one-half of 1 per centum."

Bohl relies on the case of *State v. Anderson*, 116 N.W.2d 623 (N.D.1962). That case, however, is not relevant because it was decided under prior statutory law. The statute Bohl was charged under prohibits delivery of "alcoholic beverages". The statute in effect at the time of the *Anderson* case, however, made it illegal to deliver "intoxicating liquor" to individuals under the age of 21. Therefore, in the *Anderson* case, the State was required to prove that the particular brand of beer was an "intoxicating liquor" rather than an alcoholic beverage as the State is required to prove in this case. "Intoxicating liquor" was defined at the time of the *Anderson* case as "any alcoholic, spirituous, vinous, fermented, malted or other liquor which contains more than *four per cent of alcohol by weight.*" *Id.* at 624 [Emphasis added.]. There was no proof in *Anderson* that the beer contained more than four percent of alcohol by weight. In this case, the State was only required to prove delivery of an alcoholic beverage to a minor, and all that requires is that the beverage contain one-half of one percent of alcohol by volume.

Bohl's final argument is that the condition for probation requiring Bohl to refrain from the use of alcoholic beverages is arbitrary and contrary to State statute, and an abuse of judicial discretion. The conditions of probation are provided for in Section 12.1–32–07, N.D.C.C., as follows:

"1. The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him to do so. The court shall provide as an explicit condition of every sentence to probation that the defendant not commit another offense during the period for which the sentence remains subject to revocation.

"2. When imposing a sentence to probation, the court may impose such conditions as it deems appropriate, and may include any one or more of the following:

\* \* \* \* \* \*

h. Refrain from excessive use of alcohol, or any use of narcotics or of another dangerous or abusable drug without a prescription."

Bohl apparently is arguing that more stringent requirements cannot be set by the sentencing court. We disagree. We do not believe that the trial court in this case abused its discretion. The statute allows the court to fashion any probation requirements it deems reasonably necessary to ensure that the defendant will lead a law-abiding life. The offense Bohl is charged with is delivery of alcohol to a minor, obviously an alcohol-related offense. We believe that the trial court acted properly in using such an innovative approach to conditioning probation. If Bohl cannot use alcohol, he is less likely to purchase it; if he does not purchase it, he is less likely to deliver it to minors; and if he does not deliver it to minors, the court's objective will have been accomplished. Who could strenuously argue against that result, especially when it is considered that the restriction is for a very limited time?

For the reasons stated in this opinion, we affirm.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.