**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Robert PERBIX, Defendant and Appellee.**

**Cr. No. 872.**

Supreme Court of North Dakota.

March 3, 1983.

---

Alan Duppler, State's Atty., Stanton, for plaintiff and appellant.

Ralph A. Vinje, Bismarck, for defendant and appellee.

PAULSON, Justice.

This case involves the validity of a search of a probationer's residence conducted by law enforcement officers pursuant to authority granted in a "search clause" which was made a condition of the defendant's probation in a prior judgment of conviction. The State appeals from an order of the District Court of Mercer County, dated June 14, 1982, suppressing evidence discovered during the course of the search. We reverse.

In February of 1980, Robert A. Perbix [Perbix] pled guilty to and was convicted of two charges of possession of a controlled substance. As a result, Perbix was fined $475 on each charge and was sentenced to serve one year at the State Farm, with $250 of the fine on each charge and eight months of the sentence suspended for two years. It was further ordered that Perbix be placed under probation. In addition to the condition that Perbix not violate any laws during the period of his probation, the following condition was imposed:

> "3. That the defendant shall allow the search of his person, place of residence and motor vehicle, at any time, day or night, by any police officer or probation officer, with or without a search warrant and with or without probable cause."

On December 2, 1981, Officer Wesley Berg of the Mercer County Sheriff's Department, who was aware of the "search clause" in Perbix's prior judgment of conviction, approached Hazen Police Chief Patrick Foley and suggested that they conduct a search of Perbix's residence because the search provision had not been previously implemented.[1] Although the state's attor-

---

1. Concerning the initial decision to search Perbix's residence, Police Chief Foley testified at the preliminary hearing as follows:

"Q. (MR. VINJE CONTINUING) What prompted the first meeting when you made a decision to search this particular residence?
"A. Officer Wesley Berg approached me and indicated that we had not searched previous to this and perhaps we should.
"Q. He just thought it was a good idea at the time?
"A. Basically.

"Q. So Wes Berg approached you; is that correct?
"A. Yes, sir.
"Q. Was anybody else involved in this decision making process?
"A. In the decision making process, no. I probably mentioned it to my officers.
"Q. Did you ever talk with Mr. Perbix's parole officer?
"A. No, I did not. Excuse me. To answer your prior question better, we did contact the State's Attorney prior to the search and consult with him.

ney was consulted about a search and approved it, Perbix's probation officer was not contacted. No attempt was made to obtain a search warrant.

At approximately 1:30 p.m. on December 4, 1981, Police Chief Foley, Officer Berg, and six other officers from the Hazen Police Department and the Mercer County Sheriff's Department arrived at the trailer home in which Perbix had been living for several years, for the purpose of conducting a search of the residence. Foley knocked on the door and when a voice asked who was outside, he answered "police officers". Sharon Farrand, the other occupant of the home, opened the door and Foley advised her that the police were there "to implement the search clause on Bob's probation". The officers then entered and found Scott Galyen and Farrand's young daughter in the living room. Foley asked Farrand where Perbix was and she replied that he was in the bathroom. Foley walked down the hall to the bathroom, knocked on the door, identified himself, and asked Perbix to open the door. When the door opened, Foley informed Perbix that the police were there to implement the search clause. Perbix did not object. The search of the kitchen and living room of the trailer home produced 48.79 grams of marijuana and 4.71 grams of hashish.

In a criminal information dated March 15, 1982, Perbix was charged with two counts of class C felony possession of a controlled substance.[2] *See* § 19–03.1–23(3) of the North Dakota Century Code. On March 25, 1982, Perbix made a motion to suppress the evidence discovered during the course of the search. Following a hearing on the motion, the district court issued its order granting the suppression motion on June 14, 1982.[3] The State has appealed from this order.

The following issues are presented for review:

(1) Whether or not the "search clause" contained in the defendant's prior judgment of conviction is valid in light of § 12.1–32–07(2)(*o*), N.D.C.C., which states that such searches may be executed "by a probation officer", but fails to mention police officers; and

(2) Whether or not the "search clause" in the instant case and the manner in which it was executed violated the defendant's Fourth Amendment rights against unreasonable searches and seizures.

■ Before addressing these issues, we must first consider Perbix's contention that this appeal should be dismissed because the State failed to comply with the requirements of § 29–28–07, N.D.C.C. That section provides, in pertinent part, as follows:

*"29–28–07. From what the state may appeal.*

An appeal may be taken by the state from:

. . . . . .

"Q. I see. And he thought it was a pretty good idea?
"A. Yes.
"Q. Okay. You didn't check with the parole officer?
"A. No, we did not.
"Q. Now, Mr. Perbix had been searched in the past by some of your officers, hadn't he?
"A. As a result of arrests. Not as a result of this.
"Q. Weren't there just some spontaneous searches made?
"A. Not to my knowledge.
"Q. Well, Mark Moran has never said anything to you about searches he's made of Mr. Perbix?
"A. I don't recall that he's ever said anything about searching Mr. Perbix as a—contingent to this search clause."

**2.** No action was taken to have Perbix's probation revoked. During oral arguments, the State said the reason for pursuing new criminal charges rather than seeking probation revocation was because of the amount of contraband discovered during the search and the short amount of time left of Perbix's probation period. Separate criminal charges were also brought against Sharon Farrand and Scott Gaylen. Counsel informed us that Gaylen has since been acquitted of the charges against him.

**3.** The order of the district court grants suppression motions in both the State's case against Perbix and the State's case against Farrand. Farrand, however, is not a party in this appeal.

"5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

The State filed its notice of appeal on June 21, 1982, but the statement of the prosecuting attorney was not filed until September 9, 1982. In the past we have been reluctant to dismiss similar appeals in which the State has failed to file the prosecuting attorney's statement along with the notice of appeal, particularly where an appellee has not challenged the content of the statement, but, rather, only the date of its filing. *Compare State v. Borden,* 316 N.W.2d 93, 96 (N.D.1982); *State v. Fields,* 294 N.W.2d 404, 406 (N.D.1980); *State v. Harris,* 286 N.W.2d 468, 470 (N.D.1979), *with State v. Dilger,* 322 N.W.2d 461 (N.D. 1982). Because of the importance of reaching the merits in this case and because the appellee has not been prejudiced by the State's delay in filing the prosecuting attorney's statement, we decline to dismiss the appeal in the instant case on this ground. However, we add that the procedures governing the State's right to appeal from an order suppressing evidence should not be taken lightly, and once again we express our disapproval of this delay in filing. We also note the following caveat from our opinion in *Fields, supra* 294 N.W.2d at 406:

"... our decision to allow the appeal should not be read as shifting to a defendant the burden of proving that the State could still reasonably prosecute without the suppressed evidence. Nor

does it mean that in the future this court will not consider dismissing appeals for failure to file the prosecutor's statement with the notice of appeal."

I

## VALIDITY OF THE SEARCH CLAUSE UNDER § 12.1–32–07, N.D.C.C.

We next consider whether or not the "search clause" in Perbix's prior judgment of conviction is valid in light of the provisions of § 12.1–32–07, N.D.C.C. That section, in part pertinent to the instant case, provides:

"*12.1–32–07. Conditions of probation —Revocation.*—.1. The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him to do so. The court shall provide as an explicit condition of every sentence to probation that the defendant not commit another offense during the period for which the sentence remains subject to revocation.

"2. When imposing a sentence to probation, the court may impose such conditions as it deems appropriate, and may include any one or more of the following:

.    .    .    .    .

"o. Submit his person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant."

Perbix argues that the search clause involved in the present case is invalid because it allows searches to be conducted by police officers in addition to probation officers, whereas § 12.1–32–07(2)(*o*), N.D.C.C., specifically grants authority to conduct such searches to probation officers. The State, on the other hand, contends that § 12.1–32–07(2)(*o*), N.D.C.C., only illustrates a condition that may be placed on a defendant's probation and does not limit the condition in any way because § 12.1–32–07(1) gives the court broad latitude in fashioning appropriate probation conditions.

In *State v. Bohl,* 317 N.W.2d 790 (N.D. 1982), our court was faced with a somewhat similar situation. The defendant in *Bohl, supra,* had been convicted of delivering an alcoholic beverage to a person under the age of 21 years. As part of his sentence, the defendant was placed on probation. One of the conditions of his probation was that he refrain from the use of alcoholic beverages during the period of his probation. The defendant in *Bohl* claimed that the condition was contrary to state law because § 12.1–32–07(2)(h), N.D.C.C., provides that as a condition of probation a court may only order a defendant to refrain from *excessive* use of alcohol. We disagreed, concluding that § 12.1–32–07 "allows the court to fashion any probation requirements it deems reasonably necessary to ensure that the defendant will lead a law-abiding life". *Bohl, supra* 317 N.W.2d at 796.

The legislative history behind the implementation of § 12.1–32–07, N.D.C.C., clearly reveals that the statutory list of conditions is to be deemed inclusive, rather than exclusive, and that the imposition of any one or more of the conditions is purely a matter of judicial discretion so as to allow a judge to tailor conditions to meet particular facts and circumstances in any given case. *See* Minutes of the Committee on Judiciary "B" of the Legislative Council, August 25, 1972, at pages 61–62. The only statutory limitation on the imposition of conditions of probation is that such conditions must be "reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him to do so". § 12.1–32–07(1), N.D.C.C. Thus, we conclude that § 12.1–32–07(2)(*o*), N.D.C.C., does not necessarily limit the authority to conduct such searches to probation officers only.

The district court determined, however, that our rationale in *Bohl, supra,* was inapplicable in the instant case because the search provision section of the probation statute has "constitutional underpinnings in the Fourth Amendment", whereas the provision at issue in *Bohl* did not. Therefore, we will next determine whether or not the search clause in Perbix's prior judgment of conviction and the resulting search conducted pursuant to the authority granted therein pass constitutional muster under the Fourth Amendment.

II

VALIDITY OF THE SEARCH CLAUSE UNDER THE FOURTH AMENDMENT

We begin by recognizing that probation is not the same as freedom. A probationer is a convicted criminal who has been sentenced to a term of imprisonment and who has been allowed to serve at least a portion of that term outside the confines of a jail. Although the constitutional status of probationers has not been precisely delineated, case law clearly indicates that probationers are neither totally bereft of nor fully invested with constitutional protections. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In *State v. Schlosser,* 202 N.W.2d 136, 139 (N.D.1972), our court stated that a:

"... defendant's status as a probationer does affect his rights under the Fourth Amendment. The court has a responsibility to regulate a probationer's activities to help in his rehabilitation and at the same time to guard against continued criminal behavior."

*Schlosser, supra* 202 N.W.2d 136, 137, involved the condition of an order suspending the imposition of sentence for the offense of possession of marijuana which similarly required that the defendant " 'consent to his parole officer or other law enforcement officers to search his home, property or person at any time without a search warrant' ". The defendant in *Schlosser, supra,* while on probation, was arrested on a charge of possession of marijuana and was placed in jail. Later that day he was taken from jail by his probation officer and two law enforcement officers and was taken to his apartment which was then searched in his presence without a warrant. Marijuana

and hashish were discovered as a result of the search. The products of the search were admitted in evidence at his probation revocation hearing and the defendant was subsequently sentenced to imprisonment in the State Penitentiary for one year.

Relying to a large extent on the California Supreme Court's decision in *People v. Mason,* 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630 (1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (1972), our court concluded such a condition of probation is valid if it is reasonable and is related to the probationer's reformation and rehabilitation in the light of the offense of which he was convicted. This court, in *Schlosser, supra* 202 N.W.2d at 139, also adopted the test applied by the California court in *Mason, supra,* which was set forth in *People v. Dominguez,* 256 Cal.App.2d 623, 64 Cal.Rptr. 290, 293 (1967):

"A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid."

Applying this test in *Schlosser, supra,* we concluded that the condition imposed constituted a reasonable and necessary element of the defendant's probation and, as such, the warrantless search and seizure of the contraband from his apartment by his probation officer was not unreasonable under the Fourth Amendment, and the evidence seized was admissible in his probation revocation hearing.

Perbix contends that *Schlosser, supra,* can be distinguished from the instant case because in *Schlosser* the probation officer concurred in and participated in the search; the defendant had just been arrested for possession of marijuana immediately prior to the search, thus providing authorities with at least a "logical reason" if not probable cause; and the fruits of the search were used in a probation revocation proceeding. The question thus becomes whether or not our rationale in *Schlosser* may be extended to include situations in which police officers, without the knowledge or assistance of a defendant's probation officer and without probable cause or even a reasonable suspicion that the defendant is engaging in criminal activities or violating a condition of his probation, conduct a search pursuant to such a search clause and use the fruits of that search as a basis for a new criminal charge.

Respectable and well-reasoned authorities have reached contrary results concerning the constitutional validity and application of search provisions of the type involved in the instant case. *See generally* Note, *Fourth Amendment Limitations on Probation and Parole Supervision,* 1976 Duke L.J. 71 (1976); Note, *Search and Seizure Rights of Parolees and Probationers in the Ninth Circuit,* 44 Fordham L.Rev. 617 (1975); Note, *Striking the Balance Between Privacy and Supervision: The Fourth Amendment and Parole and Probation Officer Searches of Parolees and Probationers,* 51 N.Y.U.L.Rev. 800 (1976); 3 W. LaFave, *Search and Seizure* § 10.10 (1978); Annot., 79 A.L.R.3d 1083 (1977). Although most courts have upheld the validity of various forms of search provisions made a condition of a defendant's probation, many jurisdictions appear to limit the parties who may conduct such searches to probation officers or law enforcement officers acting under the direction of a probation officer.[4] *See United States v. Consuelo-Gonzalez,* 521 F.2d 259, 265–267 (9th Cir.1975); *Roman v.*

---

4. However, the Court of Appeals of Michigan, in *People v. Peterson,* 62 Mich.App. 258, 233 N.W.2d 250, 255 (1975), ruled that a probationer's signed acceptance of a search provision in an order of probation requiring that she submit her person and premises to searches by a probation officer and by any law enforcement officers without a search warrant "was in legal effect coerced and thus rendered nugatory" because "the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government". A more recent decision of the Court of Appeals of Michigan is contra. *See People v. Richards,* 76 Mich.App. 695, 256 N.W.2d 793, 795 (1977).

*State,* 570 P.2d 1235, 1243 (Alaska 1977); *Grubbs v. State,* 373 So.2d 905, 910 (Fla. 1979); *State v. Fogarty,* Mont., 610 P.2d 140, 150 (1980); *Seim v. State,* 95 Nev. 89, 590 P.2d 1152, 1155 (1979); *State v. Bollinger,* 169 N.J.Super. 553, 405 A.2d 432, 438 (1979); *People v. Fortunato,* 50 A.D.2d 38, 376 N.Y.S.2d 723, 727 (1975); *State v. Fisher,* 32 Or.App. 465, 574 P.2d 354, 356 (1978); *State v. Cummings,* 262 N.W.2d 56, 61 (S.D. 1978); *Tamez v. State,* 534 S.W.2d 686, 692 (Tex.Cr.App.1976); *Sanderson v. State,* 649 P.2d 677, 679 (Wyo.1982). Several courts have also stated that, at the very least, some sort of "reasonable cause" requirement must first be met before a search can be validly conducted. *See Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir.), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); *United States v. Consuelo-Gonzalez, supra* 521 F.2d at 266; *State v. Fogarty, supra* 610 P.2d at 150–153; *Seim v. State, supra* 590 P.2d at 1155; *People v. Fortunato, supra* 376 N.Y.S.2d at 727.

Other jurisdictions, however, appear to have ruled that there is no constitutional or statutory impediment to allowing police officers the same right as probation officers to conduct such searches pursuant to a condition of probation. *See Owens v. Kelley,* 681 F.2d 1362, 1369 (11th Cir.1982); *State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329, 1331 (1977); *People v. Mason,* 5 Cal.3d 759, 97 Cal.Rptr. 302, 306, 488 P.2d 630, 634 (1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (1972); *State v. Morgan,* 206 Neb. 818, 295 N.W.2d 285, 288–289 (1980); *State v. Mitchell,* 22 N.C.App. 663, 207 S.E.2d 263, 264 (1974).[5] Also, some of these courts have either explicitly or implicitly declined to require that such searches be based on "reasonable suspicion" or "probable cause". *See Owens v. Kelley, supra* 681 F.2d at 1368; *State v. Morgan, supra* 295 N.W.2d at 289; *State v. Mitchell, supra* 207 S.E.2d at 264.

We find persuasive the collective rationale of those courts which find no constitu-

tional infirmity in allowing police officers, as well as probation officers, to conduct warrantless searches as a condition of probation. In *Owens v. Kelley, supra* 681 F.2d at 1369, a panel of the Eleventh Circuit Court of Appeals stated:

> "Owens and amicus . . . argue that if warrantless searches are to be permitted we should only allow such searches by probation supervisors and not by law enforcement officers. We are not convinced, however, that such a distinction should be drawn. While the primary task of supervising Owens' probation rests with the state probation supervisors, law enforcement officers can lend legitimate assistance by conducting searches pursuant to the probation condition. . . . such searches are lawful so long as they are in fact conducted for probationary purposes. They cannot be conducted as 'a subterfuge for criminal investigations.' *United States v. Consuelo-Gonzalez,* 521 F.2d at 267."

We believe an individual convicted of a criminal offense who is placed on probation should be subject to certain reasonable restrictions on his living in an open society. By the fact of his or her conviction, the probationer has already demonstrated a need for supervised control. *See Grubbs v. State, supra* 373 So.2d at 909. We are also cognizant of the fact that criminal activities on the part of drug offenders are often uncovered only through searches of the personal property of the defendant. In this regard, the Nebraska Supreme Court, in *State v. Morgan, supra* 295 N.W.2d at 289, stated:

> ". . . To the extent that the possibility of such searches restrains previously convicted drug offenders from further activity in that field, it clearly aids in the rehabilitation process. Were we to flatly prohibit such searches under provisions similar to those contained in the probation order in this case [allowing law en-

---

**5.** Since the date of the court's decision in *Mitchell, supra,* the North Carolina General Assembly has specifically prohibited courts from imposing conditions that probationers submit to warrantless searches by law enforcement officers. *See* N.C.Gen.Stat. § 15A–1343(b)(15) (Cum.Supp.1981).

forcement officers to conduct searches], we would, we believe, unnecessarily impede and hamper law enforcement authorities, as well as the probation process itself. Reasonable searches are necessary and should be permitted in order to determine whether the probationer is abiding by the conditions of the probation, so that those supervising such persons may determine whether the probationer is making progress in rehabilitation efforts, particularly in drug offenses, or whether the probationer has fallen by the wayside and has resumed his or her incursions into the field of drug addiction, drug abuse, and similar activities."

Another consideration is that probation under certain circumstances is, we believe, desirable for several reasons. For example, it tends to maximize the probationer's usefulness in society while still vindicating the authority of the law in protecting the public. If probation conditions related to the purposes of probation cannot be imposed by a trial judge, the use of probation may substantially decline. Thus, in those cases in which a judge is wavering between an active or a suspended sentence, such restrictions might well tip the scales in favor of imprisonment because the judge cannot impose the type of sentence he or she believes appropriate under the circumstances. *See Grubbs v. State, supra* 373 So.2d at 909; *State v. Grant,* 40 N.C.App. 58, 252 S.E.2d 98, 100 (1979). Also entering into consideration is the fact that a probation officer's excessive caseload or distance from the pro-

bationer may limit the ability of the probation officer to conduct such searches.

■ Therefore, we conclude that conditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are valid and not violative of the Fourth Amendment.[6]

■ We also decline to impose a requirement that such searches may be permitted only upon a showing of "reasonable suspicion" or "probable cause". In *Owens v. Kelley, supra* 681 F.2d at 1368–1369, the court stated:

"... Searches of the residence and person of probationers ... are not conducted only when there is suspicion of a crime.... the primary purpose of such searches is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have "reasonable suspicion" or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition.

"Any search conducted pursuant to the search condition of probation must, of course, be carried out in a reasonable manner and only in furtherance of the

---

6. Perbix relies heavily on *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir.1975), which held that probation officers may search without a warrant as a condition of probation but that law enforcement officers may not be given this right as a condition of probation. We note, however, that the court's decision was based in part on the Federal Probation Act and that the court recognized that States might impose different standards which would be otherwise constitutional. The court in *United States v. Consuelo-Gonzalez, supra* 521 F.2d at 266, stated:

"It is obvious, however, that opinions differ as to what controls are improper, and we express no opinion here regarding the extent to which the states constitutionally may im-

pose conditions more intrusive on the probationer's privacy than those we here have indicated are proper under the Federal Probation Act. For this reason we express no opinion regarding the decision of the Supreme Court of California in *People v. Mason,* 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630 (1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (1972), which permitted contraband, discovered by means of a search by police officers pursuant to a probation condition similar to that before us, to be used in obtaining the conviction of a probationer for the offense to which the contraband related." *See also State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329, 1331 (1977).

purposes of probation. The terms of the condition do not authorize any "intimidating and harassing search to serve law enforcement ends totally unrelated" to either Owens' conviction or rehabilitation. *United States v. Consuelo-Gonzalez,* 521 F.2d at 265. We thus find that on its face the condition of probation is constitutional and is capable of being lawfully applied. *See United States v. Gordon,* 540 F.2d 452 (9th Cir.1976)."

In the instant case, Perbix discussed the terms of the plea agreement with his attorney and the possible ramifications of the search provision were explained to him. Perbix also received a copy of the criminal judgment which contained the search provision. Law enforcement officers, who had prior knowledge of the probationary search condition, performed the search in the early afternoon. It was the only time Perbix had been searched pursuant to the probation condition. Although there can often exist a fine line between purely probationary or correctional purposes and police investigatory objectives, under the facts presented here, we conclude that the predominant purpose for the search was to determine whether or not the conditions of Perbix's probation had been violated. It was not an intimidating and harassing search designed to serve law enforcement ends totally unrelated to either Perbix's conviction or his rehabilitation.

Finally, we have not been persuaded by any case law to adopt the proposition that evidence obtained as a result of a *valid* search conducted pursuant to a search provision may be used only in a probation revocation proceeding rather than in a new criminal prosecution. We note that most of the decisions discussing the validity of probation search clauses concern cases in which the defendant is challenging use of the evidence in a subsequent criminal prosecution. Most of these cases do not discuss the question of use of the evidence in this manner, apparently finding it implicit that the evidence may be used for new criminal prosecutions if the search itself is found to be valid. We agree with the few courts which have addressed this contention and which found it to be without merit. *See Latta v.*

*Fitzharris,* 521 F.2d 246, 252–253 (9th Cir.), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); *United States ex rel. Santos v. New York State Bd. of Par.,* 441 F.2d 1216, 1218–1219 (2d Cir.1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972). Thus, the fact that the evidence in *Schlosser, supra,* was used in a probation revocation proceeding rather than being used as the basis for a new criminal charge, as was done in the instant case, is not significant.

Because the search provision in the instant case related to Perbix's prior criminal conduct, related to activity which is criminal in itself, and prohibited conduct which is reasonably related to future criminality under the test set forth in *Schlosser, supra,* the search provision and the resultant search, which was performed in a reasonable manner, did not violate the defendant's Fourth Amendment rights. Furthermore, because the search provision was reasonably necessary to ensure that Perbix lead a law-abiding life, the provisions of § 12.1–32–07, N.D.C.C., were not violated.

Accordingly, the order of the district court suppressing the evidence discovered during the course of the search is reversed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.