2002 ND 121

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brent Gary MAURSTAD, Defendant and Appellant.**

Nos. 20010292, 20010293.

Supreme Court of North Dakota.

July 16, 2002.

Rehearing Denied Aug. 15, 2002.

Barbara L. Whelan, State's Attorney, Cavalier, for plaintiff and appellee.

Robin L. Olson, Olson Johnston Law Office, Grand Forks, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Brent Maurstad appeals from two Northeast Judicial District Court judgments of conviction, one for possession of methamphetamine with intent to deliver and one for manufacturing a controlled substance. The district court had denied his motion to suppress evidence seized during a probationary search of him and his vehicle and a search of his father's place of business. We affirm, concluding the search of Maurstad and his vehicle was a valid probationary search, and he abandoned the issue of the validity of the search of his father's place of business.

I

[¶ 2] At the time of the search, Maurstad was on probation as a result of a drug-related offense. One condition of his probation required him to "submit to search of [his] person, vehicle, or place of residence by any probation [officer] at any time of the day or night, with or without a search warrant."

[¶ 3] A few weeks prior to the search, a law enforcement officer with the Grand Forks Narcotics Task Force informed Maurstad's probation officers that the task force suspected Maurstad was manufacturing methamphetamine at his father's tree service shop. Maurstad was working for his father at the time. Maurstad's probation officers, along with law enforcement officers, began surveillance of the father's shop. They were unable to identify Maurstad at the shop outside of regular business hours, but observed people at the shop between one and two o'clock in the morning, unloading items from a car trunk and moving them into the shop. The probation officers directed local law enforcement officers to stop Maurstad and search him and his vehicle if they saw Maurstad leaving the shop outside of regular business hours.

[¶ 4] On the evening of May 17, 2001, one of Maurstad's probation officers received a telephone call from a law enforcement officer informing him that Maurstad was at his father's shop and asking him whether he wanted Maurstad stopped. The probation officer told the law enforcement officer to stop Maurstad when he left the shop and to wait until he, the probation officer, arrived. The probation officer attempted to contact Maurstad's other pro-

bation officer, but she was not available. The probation officer arrived at the father's shop just as Maurstad was leaving, about 8:45 p.m. Maurstad's vehicle was stopped a few blocks away and searched.

[¶ 5] During the search of Maurstad's vehicle, the law enforcement officers found a container with white residue that tested positive for amphetamine, a cooler with a lid secured by duct tape, and lithium battery strips. The officers identified these items as consistent with the manufacture of methamphetamine. Maurstad was arrested and transported to the local sheriff's office. The officers then went to the father's shop to secure it and gather information for a search warrant. Maurstad's father arrived at the shop shortly thereafter, and the officers obtained his permission to search the shop. The officers found additional evidence of methamphetamine manufacturing.

[¶ 6] Maurstad was charged with two felony offenses: possession of methamphetamine with intent to deliver, and manufacturing a controlled substance. Maurstad moved to suppress the evidence obtained from the searches.

[¶ 7] At the suppression hearing, Maurstad argued the search of him and his vehicle was not the type of search authorized by the terms of his probation because it was not done for a probationary purpose. Rather, he argued, the search was conducted to assist an ongoing criminal investigation. Maurstad also challenged the legality of the search of his father's shop, alleging his father's consent was fraudulently obtained because the law enforcement officers told his father a search warrant was on the way. Maurstad's father testified he would have consented to the search of his shop regardless of whether the law enforcement and probation officers had obtained a warrant.

[¶ 8] The district court denied Maurstad's motion to suppress, stating, in part:

[The father's] testimony was apparently different at the hearing on the Motion to Suppress than what defense counsel understood prior to trial. Part of the defendant's motion was that all items found in the Gary's Tree Service Building should be suppressed because [the father's] consent was fraudulently obtained.

Based on [the father's] testimony any evidence discovered at the business location will be admitted and the Motion to Suppress will be denied.

. . . .

In the present case Mr. Maurstad was already on probation for drug related offenses. The probation officer received information the defendant was suspected of engaging in the manufacturing of methamphetamine. The probation officer after verifying through police surveillance that the defendant was at his fathers work building and that people known to be involved with controlled substances were coming to this place, directed officers to stop and search him if he left.

The Court concludes this probationary search was reasonably conducted to determine whether the defendant was in compliance with the law. The mere fact the search results in new charges is not unusual, in fact it is commonly the case.

The Court concludes this probationary search was not a subterfuge for a criminal investigation.

Maurstad entered a conditional plea of guilty and then appealed the district court's denial of his motion to suppress the evidence seized.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jur-

isdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 10]   On appeal, Maurstad argues the evidence seized should be suppressed.

### A

[¶ 11]   "A trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *State v. LaFromboise*, 542 N.W.2d 110, 112 (N.D.1996).   "This standard of review acknowledges the significance of the trial court's opportunity to assess the credibility of witnesses and to weigh their testimony." *State v. Smith*, 1999 ND 9, ¶ 10, 589 N.W.2d 546.   Whether a violation of the constitutional prohibition against unreasonable searches and seizures has occurred is a question of law. *LaFromboise*, at 112. When reviewing the constitutionality of probationary searches, we have interpreted the North Dakota Constitution to provide the same protections for probationers as provided by the United States Constitution. *Smith*, at ¶ 24 (search performed in a reasonable manner did not violate either the state or federal constitution); *LaFromboise*, at 111–14 (challenge to search based on both the state and federal constitutions upheld on the same grounds).

### B

[¶ 12]   Maurstad argues the probationary search of him and his vehicle was subterfuge to advance a criminal investigation and was a violation of the Fourth Amendment.

[¶ 13]   The authority for imposing conditions of probation is created by N.D.C.C. § 12.1–32–07(4), which provides, in part:

> When imposing a sentence to probation, probation in conjunction with imprisonment, or probation in conjunction with suspended execution or deferred imposition of sentence, the court may impose such conditions as it deems appropriate and may include any one or more of the following:
>
> . . . . .
>
> n.   Submit the defendant's person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant.

[¶ 14]   In *State v. Perbix*, this Court set forth the framework for reviewing the constitutionality of probationary searches. 331 N.W.2d 14 (N.D.1983).   The probationer in *Perbix* was on probation following his conviction for possession of a controlled substance.   The terms of his probation included "the search of his person, place of residence and motor vehicle, at any time, day or night, by any police officer or probation officer, with or without a search warrant and with or without probable cause." *Id.* at 15.   Local law enforcement officers decided to search the probationer's residence "because the search provision had not been previously implemented." *Id.*   The search revealed marijuana and hashish, and he was charged with two counts of felony possession of a controlled substance. *Id.* at 16.   The probationer attempted to suppress the evidence from the search by arguing the search clause was invalid because it authorized law enforcement officers as well as probation officers to conduct searches, contrary to N.D.C.C. § 12.1–32–07, which did not mention law enforcement officers. *Id.* at 17. The probationer also argued the search

violated the Fourth Amendment. *Id.* at 16.

[¶ 15] Maurstad confuses the specific probation clause at issue in *Perbix* with the history of N.D.C.C. § 12.1–32–07. The probation clause in *Perbix* allowed probationary searches by police officers, but N.D.C.C. § 12.1–32–07 has never included language specifically permitting or prohibiting police officers from conducting probationary searches. Section 12.1–32–07 became effective July 1, 1975, and although the subsections have been renumbered, the language allowing for searches and seizures of probationers, their residences, or vehicles has not changed. *See* 2001 N.D. Sess. Laws ch. 139, § 1; 1997 N.D. Sess. Laws ch. 133, § 1; 1995 N.D. Sess. Laws ch. 138, § 1; 1993 N.D. Sess. Laws ch. 130, § 1; 1989 N.D. Sess. Laws ch. 158, § 4; 1973 N.D. Sess. Laws ch. 116, § 31.

[¶ 16] In *Perbix*, this Court held N.D.C.C. § 12.1–32–07 did not "necessarily limit the authority to conduct such searches to probation officers only." *Id.* at 18. After reviewing the approaches taken by several other jurisdictions, this Court was persuaded by "the collective rationale of those courts which find no constitutional infirmity in allowing police officers, as well as probation officers, to conduct warrantless searches as a condition of probation." *Id.* at 20. This Court specifically pointed to *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 267 (9th Cir.1975), for the proposition a probationary search could not be conducted as "a subterfuge for criminal investigations." The Court concluded:

> conditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are val-

id and not violative of the Fourth Amendment.

*Perbix*, 331 N.W.2d at 21.

[¶ 17] In addition, this Court declined to "impose a requirement that such searches may be permitted only upon a showing of 'reasonable suspicion' or 'probable cause.'" *Id.* This Court summarized its holding by stating:

> Although there can often exist a fine line between purely probationary or correctional purposes and police investigatory objectives, under the facts presented here, we conclude that the predominant purpose for the search was to determine whether or not the conditions of Perbix's probation had been violated. It was not an intimidating and harassing search designed to serve law enforcement ends totally unrelated to either Perbix's conviction or his rehabilitation.
>
> . . . .
>
> Because the search provision in the instant case related to Perbix's prior criminal conduct, related to activity which is criminal in itself, and prohibited conduct which is reasonably related to future criminality under the test set forth in *[State v.] Schlosser*, [202 N.W.2d 136 (N.D.1972)], the search provision and the resultant search, which was performed in a reasonable manner, did not violate the defendant's Fourth Amendment rights. Furthermore, because the search provision was reasonably necessary to ensure that Perbix lead a law-abiding life, the provisions of § 12.1–32–07, N.D.C.C., were not violated.

*Id.* at 22.

[¶ 18] Since *Perbix*, challenges to the validity of a probationary search authorized by a condition of probation have been reviewed under the standard of whether the search was reasonable, including whether the search was performed in a

reasonable manner, whether the search was a subterfuge for criminal investigation, and whether the search contributed to the probationer's rehabilitation. *See State v. Smith*, 1999 ND 9, ¶ 19, 589 N.W.2d 546; *State v. LaFromboise*, 542 N.W.2d 110, 112–13 (N.D.1996); *State v. Raywalt*, 444 N.W.2d 688, 690 (N.D.1989); *State v. Perbix*, 331 N.W.2d 14, 21 (N.D. 1983).

[¶ 19] Four years after this Court's decision in *Perbix*, the United States Supreme Court addressed the constitutionality of probationary searches. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). A Wisconsin Department of Health and Social Services regulation provided that a probationary search could be conducted without a warrant as long as the probationer's supervisor approved and as long as there were "reasonable grounds" to believe contraband was present. *Id.* at 870–71, 107 S.Ct. 3164, 97 L.Ed.2d 709. Probation officers received information from law enforcement officers that the probationer might have guns in his apartment. *Id.* at 871, 107 S.Ct. 3164, 97 L.Ed.2d 709. A warrantless search was conducted, and as a result of the search, the probationer was charged with possession of a firearm by a convicted felon. *Id.* at 872, 107 S.Ct. 3164, 97 L.Ed.2d 709. The probationer challenged the search of his home by probation officers without a search warrant. *Id.*

[¶ 20] The Supreme Court upheld the search, holding: "The search of [the probationer's] home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Id.* at 873, 107 S.Ct. 3164, 97 L.Ed.2d 709. The Supreme Court also stated, "[a] State's operation of a probation system ... presents 'special needs'

beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709. The Supreme Court concluded by stating its "conclusion makes it unnecessary to consider whether ... any search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present." *Id.* at 880, 107 S.Ct. 3164, 97 L.Ed.2d 709.

[¶ 21] In 1999, we reviewed the constitutionality of a probationary search in light of the *Griffin* decision. *State v. Smith*, 1999 ND 9, 589 N.W.2d 546. In *Smith*, a probationer challenged the warrantless search of his residence by his probation officer and members of local law enforcement agencies. *Id.* at ¶¶ 1, 4. The probationer was on supervised probation as a result of convictions for possessing drug paraphernalia and making a false report to a law enforcement officer. *Id.* at ¶ 2. His conditions of probation included a clause stating he was to "submit to a search of his person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant." *Id.* The probationer's probation officer was informed by law enforcement officers that the probationer was suspected of drug activity in his home. *Id.* at ¶ 3. The probation officer, with the assistance of law enforcement officers, searched the probationer's home and vehicle, and during the search, marijuana and drug paraphernalia were found. *Id.* at ¶ 5.

[¶ 22] The probationer argued, in light of *Griffin v. Wisconsin*, "reasonable suspicion" was required for a valid probationary search and because *Perbix* had not required reasonable suspicion, *Perbix* should be overruled. *Id.* at ¶ 18; *see also Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *State v. Perbix*, 331 N.W.2d 14, 21 (N.D.1983). We rejected

the probationer's interpretation of *Griffin* and concluded *Griffin* could be harmonized with the holding in *Perbix:*

> *Griffin* does not specifically require reasonable suspicion; it requires the search to be reasonable under a state's statute on probationer searches. Further, nothing in *Griffin* suggests the clear logic and holding of *Perbix* should be reversed.

*State v. Smith,* 1999 ND 9, ¶ 18, 589 N.W.2d 546. In *Smith,* we endorsed the continuing validity of *Perbix, id.* at ¶ 16, and again "declined to impose a requirement probationary searches may only be carried out upon a showing of 'probable cause' or 'reasonable suspicion.'" *Perbix,* at 21; *see also State v. LaFromboise,* 542 N.W.2d 110, 112 (N.D.1996) (affirming *Perbix* ); *State v. Raywalt,* 444 N.W.2d 688, 690 (N.D.1989) (reaffirming *Perbix* ).

[¶ 23] Since *Smith,* the United States Supreme Court has once more addressed the legality of probationary searches. *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Maurstad argues that under *Knights,* a warrantless probationary search for an "investigatory" purpose is invalid and a probationary search must be based on "reasonable suspicion" to be valid.

[¶ 24] In *Knights,* a probationer challenged the warrantless probationary search of his home. *Id.* at 590, 122 S.Ct. 587, 151 L.Ed.2d 497. The probationer was on probation for a drug offense, and the conditions of his probation required him to " '[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probationer officer or law enforcement officer.'" *Id.* at 589, 122 S.Ct. 587, 151 L.Ed.2d 497. After becoming suspicious that the probationer was involved in an arson, a law enforce-

ment officer decided to conduct a search of the probationer's home under the search clause in his conditions of probation. *Id.* The search revealed evidence connected to the arson, and the probationer was indicted "for conspiracy to commit arson, for possession of an unregistered destructive device, and being a felon in possession of ammunition." *Id.* at 589–90, 122 S.Ct. 587, 151 L.Ed.2d 497.

[¶ 25] The probationer moved to have the evidence suppressed, and the district court granted his request, stating that although the law enforcement officer had reasonable suspicion to believe the probationer was involved with incendiary materials, the search was conducted for "investigatory" rather than "probationary" purposes. *Id.* at 590, 122 S.Ct. 587, 151 L.Ed.2d 497. The Ninth Circuit Court of Appeals agreed and upheld the suppression on appeal. *Id.* (citing *United States v. Knights,* 219 F.3d 1138 (9th Cir.2000)). The Supreme Court disagreed and reversed the suppression of the evidence. *Id.* at 593, 122 S.Ct. 587, 151 L.Ed.2d 497.

[¶ 26] The Supreme Court used its "general Fourth Amendment approach of 'examining the totality of the circumstances'" to decide the validity of the search of the probationer's home. *Id.* at 591, 122 S.Ct. 587, 151 L.Ed.2d 497. The Supreme Court stated, "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 591, 122 S.Ct. 587, 151 L.Ed.2d 497 (citing *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)). The Supreme Court discussed the individual and governmental interests at issue when a probationer is subject to a search condi-

tion, concluding "the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house." *Id.* at 592, 122 S.Ct. 587, 151 L.Ed.2d 497. Accordingly, the Supreme Court held:

> When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.
>
> The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.

*Id.* at 593, 122 S.Ct. 587, 151 L.Ed.2d 497 (citations omitted). Because the district court found there was reasonable suspicion for the search and the probationer admitted there was reasonable suspicion for the search, the Supreme Court held "that the warrantless search of [the probationer], supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." *Id.*

[¶ 27] The Supreme Court declined to address a situation where a search was not supported by reasonable suspicion.

> We do not decide whether the probation condition so diminished, or completely eliminated, [the probationer's] reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion.

*Id.* at 592 n. 6, 122 S.Ct. 587, 151 L.Ed.2d 497 (internal citation omitted).

[¶ 28] *Knights* does not hold that a probation or police officer must have reasonable suspicion for a probationary search to be valid. Nor does *Knights* say a warrantless probationary search, conducted under a search clause allowing a search without suspicion, would violate the Fourth Amendment. Rather, *Knights* holds, in part, that when a probationary search is authorized by a condition of probation and is supported by reasonable suspicion, it is reasonable under the Fourth Amendment. *Id.* at 593, 122 S.Ct. 587, 151 L.Ed.2d 497. We need not apply our prior case law holding reasonable suspicion or probable cause is unnecessary for a probationary search to be valid, *see Smith,* 1999 ND 9, ¶ 9, 589 N.W.2d 546; *LaFromboise,* 542 N.W.2d at 112; *Perbix,* 331 N.W.2d at 21; N.D.C.C. § 12.1–32–07(4), because a probationary search supported by reasonable suspicion and authorized by a condition of probation is a valid probationary search. *See Knights,* 122 S.Ct. at 593, 122 S.Ct. 587, 151 L.Ed.2d 497.

[¶ 29] The *Knights* decision also addressed the issue of official purpose.

> Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose. With the limited exception of some special needs and administrative search cases, see *Indianapolis v. Edmond,* 531 U.S. 32, 45, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), "we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

*United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 593, 151 L.Ed.2d 497 (2001).

The *Knights* decision applied the holding of *Whren,* which stated, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," to cases involving a less than probable cause standard. *See id; Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

[¶ 30] This portion of the *Knights* decision has been interpreted as holding the purpose of a probationary search is not relevant when deciding whether the search was valid.

[C]ases in this circuit, however, did support the proposition that a probation search that was a subterfuge for a criminal investigation violated the Fourth Amendment.

The Supreme Court put a stop to this line of reasoning, however, in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Knights overturned a ruling of this court invalidating a search of a probationer on the ground that the search was not for probationary purposes, but was a mere subterfuge for a criminal investigation. The Supreme Court upheld the search as supported by reasonable suspicion in light of the totality of the circumstances, and stated that "there is no basis for examining official purpose." Accordingly, our circuit's line of cases holding searches of probationers invalid on the ground that they were subterfuges for criminal investigations is, in that respect, no longer good law.

*United States v. Stokes,* 286 F.3d 1132, 1135 (9th Cir.2002). *See, e.g., Moreno v. Baca,* 2002 WL 338366, at *10 n. 17, 2002 U.S. Dist. LEXIS 3902, at *36 n. 17 (C.D.Cal. Feb. 25, 2002) ("The Supreme Court also noted that the Fourth Amendment does not limit searches pursuant to a probationary condition to those with a 'probationary' purpose."); *North Carolina*

*v. Robinson,* 148 N.C.App. 422, 560 S.E.2d 154, 159 (2002) ("[T]he Fourth Amendment does not limit searches pursuant to probation conditions to those searches that have a 'probationary purpose.' "). As *United States v. Stokes* states, cases from the Ninth Circuit holding searches of probationers invalid on the ground that they were subterfuge for criminal investigations are no longer good law. Consequently, the federal precedent, *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975), relied on by this Court in *Perbix* is no longer good law.

[¶ 31] We agree with this interpretation of *Knights* and modify our standard for the validity of a probation search. We hold the alleged purpose of a probationary search is irrelevant to the determination of its validity, and overrule the portion of *Perbix* that requires the purpose of a probationary search be considered when deciding the validity of a probationary search. We will no longer consider whether the search was conducted as a subterfuge for a criminal investigation. *See United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 592, 151 L.Ed.2d 497 (2001).

[¶ 32] To summarize, we need not apply our prior case law holding reasonable suspicion or probable cause is unnecessary for a probationary search to be valid. When a probationary search authorized by a condition of probation is supported by reasonable suspicion, the search is valid. Finally, we will no longer consider whether a probationary search was conducted as subterfuge for a criminal investigation.

C

[¶ 33] Here, we conclude the validity of Maurstad's probationary searches can be decided using the standard articulated in *Knights:* whether the searches were authorized by a condition of proba-

tion and supported by reasonable suspicion.

[¶ 34] The district court found that Maurstad's probationary search was reasonable, and stated:

In the present case Mr. Maurstad was already on probation for drug related offenses. The probation officer received information the defendant was suspected of engaging in the manufacturing of methamphetamine. The probation officer after verifying through police surveillance that the defendant was at his fathers work building and that people known to be involved with controlled substances were coming to this place, directed officers to stop and search him if he left.

The Court concludes this probationary search was reasonably conducted to determine whether the defendant was in compliance with the law. The mere fact the search results in new charges is not unusual, in fact it is commonly the case.

The Court concludes this probationary search was not a subterfuge for a criminal investigation.

Although the district court did not review the probationary searches of Maurstad and his vehicle to determine whether Maurstad's probation officer had a reasonable suspicion to conduct the searches, the district court made sufficient findings of fact to allow us to review whether the facts support a reasonable suspicion.

[¶ 35] The ultimate conclusion of whether facts support a reasonable suspicion is a question of law and is fully reviewable on appeal. *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538. Reasonable suspicion exists when a reasonable person "would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *City of Devils Lake v. Lawrence*, 2002 ND 31, ¶ 8, 639 N.W.2d 466.

"[O]fficers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Id.* (quoting *City of Fargo v. Ovind*, 1998 ND 69, ¶ 9, 575 N.W.2d 901 (citations omitted)).

[¶ 36] Maurstad's probation conditions authorized searches of him, his vehicle, and his place of residence at any time, with or without a search warrant. Law enforcement officers suspected Maurstad of manufacturing methamphetamine and contacted his probation ·officers with this information. After seeing Maurstad leave the location where the officers suspected the methamphetamine manufacturing operation was taking place, Maurstad was stopped and his vehicle was searched. The search began at approximately 8:45 p.m. and was concluded within 45 minutes to an hour. Once evidence of methamphetamine manufacturing was found in his vehicle, Maurstad was placed under arrest.

[¶ 37] We agree with the district court's finding that Maurstad's probationary search was reasonable, and conclude that under the totality of the circumstances, Maurstad's probation officer had a reasonable suspicion that Maurstad was engaged in unlawful activity. Because the searches were authorized by a condition of Maurstad's probation and his probation officer had a reasonable suspicion that Maurstad was engaging in unlawful activity, the searches did not violate the Fourth Amendment. *See Knights*, 122 S.Ct. at 593.

[¶ 38] Our decision is based on the probation officer's reasonable suspicion coupled with the search condition of Maurstad's probation, and we need not decide whether a suspicionless search would satis-

fy the Fourth Amendment. *See Knights*, 122 S.Ct. at 592 n. 6.

### D

[¶ 39] On appeal, Maurstad abandoned any challenge to the suppression of the evidence obtained from the search of his father's shop on the basis of his father's consent. Maurstad's brief did not argue his father's consent was fraudulently obtained. At oral argument, when asked whether Maurstad was attempting to suppress the evidence from the search of his father's shop in addition to the search of him and his car, Maurstad's counsel responded that the evidence from the shop should be suppressed under the "fruit of the poisonous tree" doctrine. Maurstad's brief did not argue for suppression based on the "fruit of the poisonous tree" doctrine, nor did he argue this alternative theory to the district court. "Because [these issues were] not briefed or raised below, we do not consider [them] on this appeal." *Minot v. Freelander*, 380 N.W.2d 321, 324 n. 4 (N.D.1986).

### III

[¶ 40] Because the probationary search of Maurstad and his car did not violate the Fourth Amendment or article I, section 8, of the North Dakota Constitution, and because Maurstad has abandoned his appeal of the consent to search his father's place of business, we affirm the district court's judgments of conviction.

[¶ 41] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.