Crothers, Justice.
[¶ 1] Jeremy Ballard appeals a district court judgment after he conditionally pled guilty to drug charges, reserving the right to challenge the denial of his motion to suppress evidence. He argues the district court should have suppressed evidence from his residence because the suspicion-less probationary search violated his constitutional rights against unreasonable searches and seizures. We reverse because the suspicionless search of an unsupervised probationer’s home was unreasonable under the Fourth Amendment of the United States Constitution.
I
[¶ 2] In October 2013 Ballard pleaded guilty to several misdemeanor drug crimes. He was sentenced concurrently on each charge to 30 days incarceration, with 30 days suspended and two years unsupervised probation. One probation condition was that Ballard “submit to a search of his person, place and vehicle at the request of law enforcement without a warrant.” Another required him to “submit to random drug-testing without a warrant or probable cause, including but not limited to, urine analysis.”
[¶ 3] On March 28, 2014, around 7:30 p.m., a Divide County deputy sheriff saw Ballard driving a car with two passengers in Noonan, North Dakota. The deputy was aware Ballard and a passenger were on unsupervised probation and were subject to random drug test and search clauses as part of their probation. For these reasons alone, the deputy stopped Ballard’s car. The deputy testified at the preliminary hearing that he stopped Bal *63 lard for the sole reason of performing a probation search and that he. did not have any “reasonable articulabl[e] suspicion” of any drug-related or criminal activity when he made the stop. After, the deputy activated his emergency lights, Ballard pulled over in front of his residence. The deputy testified he spoke .with the individuals briefly before asking Ballard to gét out of the vehicle so he could perform a pat-down search. The search did not yield any contraband.
[¶ 4] The deputy next entered Ballard’s hom¿ without consent or a warrant. The deputy testified he was aware the house where Ballard lived was owned by a third person. After confirming Ballard lived at the residence, the deputy searched Ballard’s bedroom and found methamphetamine paraphernalia and a bag of a “clear crystalline substance” which later was confirmed by the state crime lab to be 0.41 grams of methamphetamine. Ballard was arrested and charged with possession of methamphetamine, a class C felony, and possession of paraphernalia, a class C felony.
[¶ 5] In July 2014 Ballard moved to suppress the evidence found in the search of his bedroom and to dismiss the charges against him, arguing-the State failed to demonstrate it had' reasonable suspicion for a probationary search. At the September 2014 hearing on the motion to suppress, neither party called witnesses; instead, they stipulated to the facts and testimony presented at the preliminary hearing. At the conclusion of the hearing, the district court denied Ballard’s suppression motion, stating:
“Well, what I do find factually is the facts are as testified to by Deputy Hubble, as reflected in the brief of the Defendant. And the conclusions that I draw from that testimony, that evidence, is that the search that was being conducted was a-suspicionless probationary search done pursuant to the probation that Mr. Ballard was under. And I concluded from also that information that the search was not done in an intimidating or harassing fashion. It.was done 'by a police officer, who I- understand under our case law can conduct ■... probationary searches. ■
“And therefore my reading of the Maurstad case and what it said about the U.S. Supreme Court Knights case, is that Maurstad is not precedent for this kind of search. And essentially where our state of the law is in North Dakota, as I understand it, is what the Court had previously said in the. Perbix case still applies, other than the Court does not take into consideration the motive for the search which I think was,the only thing overruled in Perbix. And,.therefore I will , deny the Suppression Motion.”
The district court issued a written order denying Ballard’s motion to suppress and dismiss charges. Ballard entered a conditional guilty plea, reserving the right to appeal the district court’s- denial of his motion to suppress the evidence seized.
.. II
[¶ 6] “A trial court’s disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.” State v. LaFromboise, 542 N.W.2d 110, 112 (N.D.1996). Questions of law are fully reviewable. State v. Adams, 2010 ND 184, ¶ 7, 788 N.W.2d 619. “Whether a violation of. the constitutional prohibition against unreasonable searches and seizures has occurred is a question of law.” State v. *64 Maurstad, 2002 ND 121, ¶ 11, 647 N.W.2d 688 (citing LaFromboise, at 112).
A
[¶7] Ballard argues the district court erred in denying his motion to suppress the evidence found during the suspi-cionless probationary search of his residence. Ballard claims the district court’s order denying his motion to suppress evidence and the criminal judgment should be reversed and he should be permitted to withdraw his conditional guilty plea. We agree.
[¶8] The Fourth Amendment to the United States Constitution and art. I, § 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures. “When reviewing the constitutionality of probationary searches, we have interpreted the North Dakota Constitution to provide the same protections for probationers as provided by the United States Constitution.” Maurstad, 2002 ND 121, ¶ 11, 647 N.W.2d 688, (citations omitted). “[U]nder our general Fourth Amendment approach we ex-amin[e] the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment.” Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (citation omitted) (quotation marks omitted).
[¶ 9] Ballard acknowledges probationary search clauses generally are permitted under N.D.C.C. § 12.1-32-07(4)(n). But he claims the suspicionless search of his residence under the statute does not pass Fourth Amendment muster. His argument calls for examination of North Dakota’s cases on probationary searches and the traditional Fourth Amendment analysis required by United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), and Samson, 547 U.S. 843, 126 S.Ct. 2193, balancing the State’s interest against an unsupervised probationer’s liberty interests and expectations of privacy. When we do so, it becomes apparent that our precedent relies on a formulation of a legal test from the 1970’s that is no longer good law.
[¶ 10] In State v. Schlosser, 202 N.W.2d 136 (N.D.1972), the defendant was a supervised probationer who appealed revocation of his deferred imposition of sentence. He claimed evidence obtained during a warrantless probationary search should be suppressed because the search was unconstitutional. The underlying facts were that Schlosser plead guilty to possession of marijuana and received a deferred imposition of sentence. Id. at 136-37. One condition of deferring imposition was “that he consent to his parole officer or other law enforcement officers to search his home, property or person at any time without a search warrant.” Id. at 137. Schlosser subsequently was arrested for possession of marijuana and, that same day, his probation officer and two law enforcement officers searched his apartment and seized additional drugs. Id.
[¶ 11] In determining whether Schlos-ser’s status as a probationer affected his Fourth Amendment rights, this Court examined United States Supreme Court and California cases and made two conclusions. First, a “defendant’s status as a probationer does affect his rights under the Fourth Amendment. The court has a responsibility to regulate a probationer’s activities to help in his rehabilitation and at the same time to guard against continued criminal behavior.” Schlosser, 202 N.W.2d at 139. Under this rationale, the North Dakota Supreme Court applied a test of the reasonableness of a search clause, stating:
“The test applied by the court was that laid down in People v. Dominguez, 256 *65 Cal.App.2d 623, 64 Cal.Rptr. 290, 293 (1967):
‘A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid.’
“Applying this rule in reverse, [Schlos-set’s search] clause (3)(g) is a reasonable and valid exercise of the court’s authority under Section 12-53-13, N.D.C.C.”
Id. at 139.
[¶ 12] The Schlosser Court’s second conclusion was that “the search and seizure of the contraband from the defendant’s apartment by his parole officer without a search warrant was not unreasonable under the Fourth Amendment to the United States Constitution, and the contraband seized was admissible in a probation violation hearing.” 202 N.W.2d at 139. Although the basis for this holding was not fully explained, the Schlosser Court apparently relied on another California holding that “a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.” Id.
[¶ 13] This Court next decided State v. Perbix, 331 N.W.2d 14 (N.D.1983). In Perbix, the defendant was charged with possession of marijuana after a warrant-less search conducted as a condition of supervised probation. Id. at 15-16. The first issue raised was whether the Fourth Amendment permits law enforcement officers, rather than probation officers, to perform probationary searches when law enforcement relies on a court imposed probationary search clause. Id. at 17. This Court held probationary searches could be performed by law enforcement officers. Id. at 20.
[¶ 14] The second issue in Perbix was whether the probationary search clause violated the Fourth Amendment. Id. at 18. The Fourth Amendment discussion started by noting, “Although the constitutional status of probationers has not been precisely delineated, case law clearly indicates that probationers are neither totally bereft of nor fully invested with constitutional protections.” This Court applied the four-part test from Schlosser and held:
“We conclude that conditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are valid and not violative of the Fourth Amendment.”
Perbix, 331 N.W.2d at 21[1]. Perbix .thus stated warrantless probation searches were valid under the Fourth Amendment if they (1) contributed to rehabilitation; (2) were not used as subterfuge for criminal investigations; and (3) were performed in a reasonable manner. By using this formulation of the test, Fourth Amendment “reasonableness” was determined by applying the three factors. As is explained below, this test is not consistent with current United States Supreme Court precedent.
[¶ 15] The Court in Perbix concluded:
*66 “Because the search provision in the instant case related to Perbixfs prior criminal conduct, related to activity which is criminal in itself, and prohibited conduct which is reasonably related to future, criminality, under the test set forth in Schlosser, swpra, the search provision and the resultant _ search, which was performed in a reasonable manner, did not violate the defendant’s Fourth Amendment rights.”
331 N.W.2d at 22.
[¶ 16] In State v. Vermilya, 395 N.W.2d 151 (N.D.1986), the defendant appealed from an order denying suppression of, evidence seized by a North Dakota probation officer under authority of probationary conditions imposed in Montana. This Court held that the Montana probationary term required reasonable cause to search and that such cause existed. Id. at 152. This Court'explained:
“In State v. Perbix, 331 N.W.2d 14 (N.D.1983), we held that a ‘search clause,’ as a condition of probation, which provided that the probationer must allow a search of his person, place of residence, or motor vehicle without a search warrant and without probable cause, did not violate the probationer’s Fourth Amendment right against unreasonable searches and seizures. We did not hold in Perbix, supra, that a search clause so restricting the probationer’s Fourth Amendment rights must be included by a tidal court as a condition of probation, nor did we hold that a search of the probationer’s residence could be conducted without warrant or probable cause in the absence of such a clause.”
Vermilya, 395 N.W.2d at 152.' The Court did not further discuss or explain the Fourth Amendment tests used in Schlosser or Perbix.
[¶ 17] After Vermilya, in 1987 the United States Supreme Court in Griffin v. Wisconsin affirmed a probation officer’s warrantless search of the supervised probationer’s home based on unsubstantiated information from a police detective. 483 U.S. 868, 871, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The search was deemed constitutional because of reasonable suspicion of misconduct found by the state court, and based on a “special need” and a valid state regulation governing probationers. Id. at 880, 107 S.Ct. 3164.
[¶ 18] The Griffin opinion discusses the State’s interest in fostering the relationship between the probation officer and his • “client” so that the public and the probationer are protected. 483 U.S. at 878-79, 107 S.Ct. 3164. It makes much of the fact that, unlike normal law enforcement, the probation officer was “an employee of the State Department of Health and Social Services who, while assuredly charged with protecting the public interest, is also supposed to 'have in mind the welfare of the probationer (who in the regulations is called' a ‘client[.]’)”. Id. at 876, 107 S.Ct. 3164 (citation omitted). The Court justified departing from a probable cause standard, stating:
“[I]t is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases — especially those involving drugs or illegal weapons — the ' probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene -before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its,entire experience with the probationer, and to assess probabilities in the *67 light of its knowledge of his life, character, and circumstances.”
Id. at 879, 107 S.Ct., 3164. The Griffin Court held, “In such a setting, we think it reasonable to dispense with the warrant requirement.” Id. at 877, 107 S.Ct. 3164. Important for purposes of the instant case is that the Wisconsin regulation in Griffin required “reasonable grounds” to search. Id. at 870-71, 107 S.Ct. 3164. Reasonable grounds existed and' Griffin therefore sheds no light on the question whether Ballard could be subject to a suspicionless probationary search. :
[¶ 19] State v. Raywalt, 444 N.W.2d 688 (N.D.1989), was decided next.' There, Raywalt argued the probationary search of the house at which he was a guest was a subterfuge for a criminal investigation and therefore invalid under Perbix. Id. at 690. This Court rejected the claim, holding the predominate purpose of the search was to determine whether Raywalt was complying with his conditions of probation. Id. Thus, “the search contributed to the rehabilitation process and was reasonable” so that the warrantless search' did not violate Ray-wait’s Fourth Amendment rights. Id. Ray-walt used the Perbix formulation of the legal test holding that the reasonable performance of the search, the contribution to the rehabilitative process and the- fact a search is not a subterfuge for criminal investigation means the search is “valid and not violative of the Fourth Amendment.” State v. Raywalt, 444 N.W.2d 688 (N.D.1989). But, as relevant to the case at bar, Raywalt provides no new guidance whether the Fourth Amendment is yiolat-. ed by a suspicionless search of an unsupervised probationer.
[¶ 20] In State v. Smith, 1999 ND 9, 589 N.W.2d 546, the issue was whether reasonable suspicion was required prior to conducting a search of a supervised probationer. Id. at ¶¶ 2, 9. Smith argued Ray-walt did not discuss Griffin, ,and that.Griffin requires that Perbix be overturned. Id. at ¶¶ 16, 17. This Court took up both the Griffin-'“special need” language and the Sehlosser and Perbix legal test on the way to concluding, “because the search of Smith’s home and car was performed in a reasonable manner, we conclude .the search did not violate Smith’s Fourth Amendment rights[.]” Id. at ¶ 24.
[¶ 21] The Smith decision 'raises several concerns. First, the Fourth Amendment holding in Smith is dicta because the case was decided on the basis that reasonable suspicion supported the search. 1999 ND 9, ¶¶ 18-19, 589 N.W.2d 546 (“Griffin does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationer searches.... While a valid probationary search need only be reasonable, the reasonable suspicion standard was met here.”). Second, the Smith Court takes an incorrect cue from Griffin, Sehlosser, Per-bix and Raywalt by improperly equating the reasonableness of the search with constitutional reasonableness under the Fourth Amendment. Smith, at ¶ 9 (“We hold the search did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search as long as the search is reasonable.”); Id. at ¶ 18 (“Griffin does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationary searches. Further, nothing in Griffin suggests the clear logic and holding in Perbix should be reversed.”). This truncated test prevents use of the required traditional Fourth Amendment analysis.
[¶22] In 2001 the United States Supreme Court decided Knights. There, the Court held that a sheriff deputy’s warrant-less search of a probationer’s home was constitutional when based on reasonable *68 suspicion of unlawful activity. 534 U.S. at 114, 122 S.Ct. 587. Doing so the Court mentioned, but did not use, the Griffin “special need” analysis and instead concluded a warrantless search of the probationer’s home “was reasonable under our general Fourth Amendment approach of ‘examining the totality of the circumstances.’ ” Id. at 118,122 S.Ct. 587 (citation omitted). Wholly absent was any mention of concern about diminishing a probationer’s Fourth Amendment protections out of the need to foster a relationship between the probation officer and a “client.” Thus, the two justifications in Griffin for reducing a probationer’s Fourth Amendment protections were not used in Knights. The Court instead stated, “reasonableness of a search is determined ‘by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.’ ” Id. at 118-19, 122 S.Ct. 587. The Knights Court described its legal test as “ordinary Fourth Amendment analysis that considers all the circumstances of a search.” Id. at 122,122 S.Ct. 587.
[¶ 23] Shortly after Knights, this Court decided State v. Maurstad, 2002 ND 121, 647 N.W.2d 688. In Maurstad, the supervised probationer argued the warrantless search was a subterfuge for law enforcement’s investigatory purpose and thus invalid. Id. at ¶ 12. This Court rejected the claim, holding Knights utilized “ordinary Fourth Amendment analysis that considers all the circumstances of a search.... ” Id. at ¶ 29 (quoting Knights, 534 U.S. at 122, 122 S.Ct. 587). The Maurstad Court stated,
“We hold the alleged purpose of a probationary search is irrelevant to the determination of its validity, and overrule the portion of Perbix that requires the purpose of a probationary search be considered when deciding the validity of a probationary search. We will no longer consider whether the search was conducted as a subterfuge for a criminal investigation.”
Id. at ¶ 31.
[¶ 24] Maurstad next claimed his probationary search must be based on reasonable suspicion to be valid. Id. at ¶23. Using the Perbix formulation of the test, the Maurstad Court stated,
“Since Perbix, challenges to the validity of a probationary search authorized by a condition of probation have been reviewed under the standard of whether the search was reasonable, including whether the search was performed in a reasonable manner, whether the search was a subterfuge for criminal investigation, and whether the search contributed to the probationer’s rehabilitation.”
Id. at ¶ 18. Specific to the Fourth Amendment, this Court stated Knights held a probationary search based on reasonable suspicion was constitutionally adequate, and Maurstad’s probation officer had reasonable suspicion that Maurstad was engaged in unlawful activity. Id. at ¶ 37. This Court further noted, “Our decision is based on the probation officer’s reasonable suspicion coupled with the search condition of Maurstad’s probation, and we need not decide whether a suspicionless search would satisfy the Fourth Amendment.” Id. at ¶ 38.
[IT 25] In 2006 the United States Supreme Court decided Samson v. California, where a police officer stopped a parolee on the street based on the officer’s mistaken belief the parolee was subject to an outstanding warrant. 547 U.S. 843, 846, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). The officer confirmed no warrant existed but nevertheless searched the probationer based solely on his status as a parolee and under state law permitting *69 their searches and seizures with or without cause. Id. at 846^7,126 S.Ct. 2193.
[¶ 26] Like Knights, the Samson Court ignored the Griffin “special need” line of thought and also failed to mention the need for relaxing Fourth Amendment standards to foster the relationship between a parolee and his supervising officer. The Samson decision instead was confined to considering whether suspicion-less searches of parolees passed muster under traditional Fourth Amendment analysis. 547 U.S. at 847,126 S.Ct. 2193. The Samson Court performed its analysis based on the totality of the circumstances test used in Knights. Id. at 848,126 S.Ct. 2193. Importantly for our consideration, both the majority and dissenting opinions in Samson explained that probationers have expectations of privacy greater than a parolee’s or a prisoner’s expectation of privacy. Id. at 850, 126 S.Ct. 2193. (“As we noted in Knights, parolees are on the ‘continuum’ of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers— ”).
[¶ 27] Most recently, this Court decided State v. Gonzalez, 2015 ND 106, ¶ 1, 862 N.W.2d 535, where a supervised probationer challenged the search of his cellular telephone. This Court cited Mawrstad for the legal proposition that “[w]hen a probationary search is authorized by a condition of probation and is supported by reasonable suspicion, the search is a valid probationary search and is reasonable under the Fourth Amendment.” Id. at ¶25. We concluded, “Under the totality of the circumstances, Gonzalez’s probation officer had reasonable suspicion that Gonzalez was engaging in unlawful activity. We conclude the probation search was supported by reasonable suspicion.” Id. at ¶ 27. Importantly for the case before us, Gonzalez did not involve a suspicionless search of an unsupervised probationer. Nor did Gonzalez cite to or argue that the United States Supreme Court decision in Samson required a different result or a reexamination of the legal analysis used in probationary search cases.
[¶ 28] Here, the State urges us to continue employing our constrictive view of the Fourth Amendment by which we looked at the constitutional reasonableness of the search through the Schlosser and Perbix lens of whether the search was performed in a reasonable manner. However, that analysis effectively ignores the directive in Knights and Samson that we must employ traditional Fourth Amendment analysis to probationary search cases.
[¶ 29] The review of precedent from the United States Supreme Court and this Court demonstrates that the use of traditional Fourth Amendment analysis in Knights and Samson was different than the legal justification in Griffin. See Wayne R. LaFave, Search and Seizure § 10.10 (5th ed.2012). (Explaining that the Supreme Court’s shift from a “special needs” analysis in Griffin to a less-restrained “totality of the circumstances” balancing in Knights and Samson is “troublesome.”). In Griffin, the Court concluded, “Supervision, then, is a ‘special need’ of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited....” 483 U.S. at 875, 107 S.Ct. 3164.
[¶ 30] North Dakota mentioned the Griffin “special need” concept in Smith and Mawrstad, but our analysis was said to follow the Knights traditional Fourth Amendment calculus. Mawrstad, at ¶¶ 26, 33. Under that holding, “The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, *70 the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental, interests”. Knights, 584 U.S. at 118-19, 122 S.Ct. 587 (internal quotation omitted).
[¶31] Applying this test, the Knights Court stated, “We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer’s house.” 534 U.S. at 121, 122 S.Ct. 587. “Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term ‘probable cause,’ a lesser degree satisfies the Constitution when the balance of governmental ... interests makes such a standard reasonable.” Id. The Knights Court concluded, “When an officer has reasonable suspicion that a probationer subject,to a search condition is engaged in.criminal activity, there is enough likelihQod that criminal conduct is occurring that an intrusion on the probationer’s significantly diminished privacy interest is reasonable.” Id. : .
[¶ 32] While the Court in Knights held reasonable suspicion rather than probable cause or a warrant allowed the house search, even for a supervised probationer the Court expressly did not authorize sus-picionless searches. To the contrary, the Court made clear “[w]e do not decide whether the probation condition so diminished, or completely eliminated, Knights’ reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.” Knights, 534 U.S. at 120 n. 6,122 S.Ct. 587 (citation omitted).
[¶33] In Samson, the- Court started where Knights left off, stating,
“Because the search at issue in Knights ■was predicated on both the probation search condition and reasonable suspicion, we did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated .upon the condition of probation. Our attention is directed to that question today, albeit in the context of a parolee search.”
547 U.S. at 850, 126 S.Ct. 2193 (citation omitted). • The Court ultimately “conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.” Id. at 857, 126 S.Ct. 2193. Again, the Court did not reach the question whether a probationer, much less an unsupervised probationer, could be subjected to the same suspicionless search.
[¶ 34] The Fourth Amendment test for the “reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.” Knights, 534 U.S. at 118-19, 122 S.Ct. 587 (internal quotation omitted). The Court in Samson explained that probationers have expectations of privacy greater than parolees or prisoners. 547 U.S. at 850, 126 S.Ct. 2193. (“As we noted in Knights, parolees are on the ‘continuum’ of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers....”) (citation omitted). ’
[¶35] Here, Ballard was an unsupervised probationer, not ■ a parolee like Knights. Ballard’s status as a probationer informs both sides of the Fourth Amendment balancing test. See Knights, 534 U.S. at 119, 122 S.Ct. 587; Samson, 547 U.S. at 848, 126 S.Ct. 2193. “Probation, like incarceration, is a form of -crimi *71 nal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.” Griffin, 483 U.S. at 874, 107 S.Ct. 3164 (citation omitted) (quotation marks omitted). “Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in .a maximum-security facility to a few hours of mandatory community service.” Id. “Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled,” which justifies the “imposition] [of] reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.” Knights, 534 U.S. at 119, 122 S.Ct. 587 (citation omitted) (quotation marks omitted). See also State v. Schlosser, 202 N.W.2d at 139 (“The defendant’s status as a probationer does affect his rights under the Fourth Amendment.”); State v. Perbix, 331 N.W.2d at 18 (“We begin by recognizing that probation is not the same'as freedom.”). Yet, probationers have greater expectations of privacy than do parolees or ’ prisoners. Samson, 547 U.S. at 850, 126 S.Ct. 2193.
■ [¶ 36] In Samson a parolee’s suspicion-less search was deemed constitutional after the Court concluded the legitimate governmental interest exceeded the parolee’s expectation of privacy. The State’s interest was described as “substantial”:
“This Court has repeatedly acknowledged that a State has ‘an “overwhelming interest” ’ in supervising parolees because ‘ “parolees ... are more likely to commit future criminal offenses.”’ Pennsylvania Bd. of Probation and Parole, 524 U.S. [357], at 365, 118 S.Ct. 2014 [141 L.Ed.2d 344 (1998) ] (explaining that the interest in combating recidivism ‘is the very premise behind the system of close parole supervision’). Similarly, this Court has repeatedly acknowledged that a State’s interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.”
547 U.S. at 853, 126 S.Ct. 2193.
[¶37] Penalties imposed' in criminal ■proceedings should bear the hallmark of proportionality. See Leo M. Romero, Punitive Damages, Criminal Punishment and Proportionality: The Importance of Legislative Limits, 41 Conn. L. Rev. 109, 118 (2008) (“Proportionality of punishment to an offense involves two judgments — how serious is the offense and how. much punishment does it deserve. In the case of criminal punishment, legislatures make these judgments.”). Legislative judgment, .as an expression of the public will, typically imposes more serious penalties on more serious crimes. Id. Presumably, the converse also is true, punishing less serious crimes less strictly. If the state’s interest in supervising parolees upon release from prison is “overwhelming,” the corollary is that the state’s interest in restraining the liberty of an unsupervised probationer is much less.
[¶38] The defendant’s expectation of privacy is the other interest to be weighed. In Samson, the parolee’s privacy interests were severely limited due to his'conditions of release from incarceration for being a felon in possession of a firearm. 547 U.S. at 846, 126 S.Ct. 2193. Samson’s parole conditions (1) required him to immediately report to his parole officer upon release from prison; (2) required him to give 72-hour notice of change of employment; (3) required him to- request permission to travel more than 50 miles from his place of habitation; (4) prohibited him from engaging in criminal conduct;- (5) barred him from possessing firearms or *72 weapons; and (6) subjected him to psychiatric treatment or other special conditions as were subsequently imposed by the Board of Parole Hearings or the California Department of Corrections. Id. at 851-52, 126 S.Ct. 2198.
[¶ 39] By contrast to Samson, Ballard pleaded guilty to two misdemeanor drug crimes. For one he was fined $200 and was sentenced to 180 days in jail with 150 days suspended. He received credit for pretrial time served in jail. Nothing indicates Ballard served time in jail after pleading guilty. He was placed on unsupervised probation, and his conditions while on probation were to undergo a chemical dependency evaluation, to be subject to warrantless searches and chemical testing. For the second crime, Ballard received a 90-day suspended jail sentence, was fined $725 and was placed on unsupervised probation.
[¶ 40] Ballard’s minimal unsupervised probation conditions stand in stark contrast to Samson’s extensive parole restraints, limitations and loss of liberty after prison time. Ballard pleaded guilty to two misdemeanors, as opposed to Samson’s felony conviction. Ballard was not incarcerated after his guilty pleas; Samson was paroled after time in prison. Ballard was not subject to supervision for either conviction. Samson was heavily supervised and his liberty was severely curtailed in virtually every respect important to a law-abiding person. Samson’s associational rights were severely curtailed. Samson’s travel rights were similarly limited. Samson was required to report his movements and changes in employment while Ballard had no similar constraints. Samson was subject to onerous and intrusive changes to his parole conditions, including psychiatric treatment or other special conditions. Ballard faced no such uncertainty and suffered no comparable loss of liberty.
[¶ 41] The United States Supreme Court described a criminal defendant’s Fourth Amendment privacy interests as a “continuum.” Samson, 547 U.S. at 850, 126 S.Ct. 2193. (“[P]arolees are on the ‘continuum’ of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.”) (citation omitted). Based on that continuum, we do not equate Samson’s extensive parole constraints with Ballard’s modest conditions of unsupervised probation. We therefore cannot conclude the governmental interest outweighs Ballard’s expectation of privacy so that Ballard’s suspicion-less search of his person and his home is reasonable under the Fourth Amendment.
[¶ 42] Because the suspicionless search of Ballard’s home was constitutionally unreasonable, the district court erred in denying his motion to suppress the fruits of the search. We reverse and remand to allow Ballard to withdraw his guilty plea.
[¶48] CAROL RONNING KAPSNER and LISA FAIR McEVERS, JJ., concur.

. The pretext prong was discarded in Maur-stad, 2002 ND 121, ¶31, 647 N.W.2d 688 ("We hold the alleged purpose of a probationary search is irrelevant to the determination of its validity_”).